IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARANDA CARPITCHER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV–21–375–JAR |
| | ) |
| KILO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Maranda Carpitcher (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is **AFFIRMED**.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800–01.

## Claimant's Background

The claimant was forty-two years old at the time of the administrative hearing (Tr. 20, 34). She possesses at least a high school education (Tr. 28). She has worked as an advertising clerk, administrative clerk, credit clerk, and credit and loans collection supervisor. (Tr. 34). The claimant alleges that she has been unable to work since April 15, 2019, due to limitations resulting from depression, anxiety, neuropathy, mental illness, IBS, PTSD, bone spurs, bulging discs in back, unaligned neck, mood disorder, panic attacks, hypoglycemia, and chronic bronchitis and COPD. (Tr. 327–328).

## Procedural History

On May 9, 2019, Claimant protectively filed for disability insurance benefits pursuant to Title II (42 U.S.C. § 401, et seq.) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. After an administrative hearing, Administrative Law Judge Doug Gabbard, II ("ALJ") issued an unfavorable decision on December 16, 2020. Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform light work with limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to consider all of Claimant's impairments in his step two analysis, (2) improperly considering the medical opinion evidence; and (3) failing to include all of Claimant's limitations in the RFC and the hypothetical questioning of the vocational expert at step five.

### Step Two and Four Analysis

In his decision, the ALJ found Claimant suffered from severe impairments of cervical spine degenerative disc disease with radiculopathy, status post C6 and C7 fractures, bilateral cubital tunnel syndrome, left carpal tunnel syndrome, COPD, bipolar I disorder, anxiety disorder, borderline personality disorder, and PTSD. (Tr. 23). He determined Claimant could perform light work with limitations. Claimant can occasionally climb ladders, ropes, or scaffolds; frequently handle and finger bilaterally as well as reach overhead, bilaterally. The ALJ limited the Claimant by finding she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants. Claimant can perform unskilled work that is simple, repetitive, and routine with supervision that is simple, direct, tactful, supportive, and non-confrontational. As for interpersonal contact, the ALJ found Claimant must only have contact with supervisors and coworkers that is incidental to work performed as well as

4

only incidental contact with the general public. Particularly, Claimant would do best in a well-spaced work setting where Claimant has her own work area or otherwise can frequently work alone. Claimant must not be required to work at fast-paced production line speeds. The ALJ further stated that Claimant should only have occasional workplace changes. Lastly, Claimant must have regular work breaks at least every two hours. (Tr. 26).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of housekeeping cleaner, power-screwdriver operator, and marker. (Tr. 28–29). As a result, the ALJ concluded Claimant had not been under a disability from April 15, 2019, the alleged date of disability, through the date of the decision, December 16, 2020. (Tr. 36).

Claimant argues that the ALJ erred at step two of the sequential evaluation process by failing to include two medically determinable impairments, a herniated disc at C4-5 and peripheral neuropathy, in his analysis. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant must demonstrate she has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-

71 (10th Cir. 2007) (quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003)); Soc. Sec. R. 85-28, 1985 WL 56856 (Jan. 1, 1985).

To the extent Claimant contends her herniated disc at C4–5 and neuropathy should have been determined severe at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of a claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' " *Id.* (quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291–292 (10th Cir. 2008)).

At step four, the ALJ expressly notes both Claimant's neuropathy and disc herniation at C4–5. During his summary of neuropathy evidence, the ALJ notes that the nerve conduction studies "revealed only mild findings." (Tr. 27, 584–588). It is clear that the ALJ also expressly considered Claimant's disc herniation at C4–5. The ALJ particularly notes the findings of neurosurgeon Dr. Daniel Boedeker, who noted that none of Claimant's conditions compelled surgery and requested Claimant to follow up. (Tr. 28–29, 854). As the ALJ found Claimant to have severe impairments, his failure to classify her neuropathy or herniation of

disc C4–5 does not constitute reversible error. Further, the mere presence of these conditions does not necessitate that the ALJ conclude they are medically determinable impairments, severe or otherwise. As there is no indication that the inclusion of the conditions of neuropathy and/or disc herniation at C4-5 in the medically determinable impairments would create any additional limitations upon Claimant's ability to engage in the assigned RFC, this Court finds no error.

### Consideration of Medical Opinions

Claimant next contends that the ALJ did not properly discuss and consider the medical evidence from treating physician, Dr. Parnid Shah, and counselor, Nancy Sparks. Particularly, Claimant suggests that the ALJ picked and chose his way through the evidence citing only that which supported a finding that Dr. Shah's and Ms. Sparks' opinions were unpersuasive. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not

7

limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.") 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Generally, the ALJ is not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). She may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."

*Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability"). If he rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

In considering Dr. Shah's opinion, the ALJ notes that Dr. Shah opined that Claimant had "'marked' limitations in most mental work-related abilities, and would miss work about four days per month," but ultimately found this conclusion to be 'poorly supported.' (Tr. 32) In his finding the ALJ states that Dr. Shah's reasoning was particularly not supported by the medical records as a whole. Although Dr. Shah stated that the limitations arose from the frequency and unpredictability of Claimant's anxiety and panic attacks, the ALJ found that Claimant has only once complained of panic attacks since the alleged date of disability. (Tr. 32). Claimant likewise does not cite to any additional instances of panic attacks in her argument. The ALJ nonetheless did recognize Claimant's other abnormal mental status findings throughout the record, indicating to this Court that the ALJ considered all evidence, not just that favorable to a finding of nondisability. Further, the ALJ concludes that Dr. Shah's limitations were inconsistent with Claimant's adult functional report, testimony at the hearing, and records indicating recent activities. The ALJ did not err in his consideration of Dr. Shah's opinion.

Claimant next contends that the ALJ erred in his analysis of Nancy Sparks' report. Specifically, Claimant believes that Ms. Sparks' opinion supports Dr. Shah's opinion and vice versa. Ms. Sparks completed a medical source statement as Claimant's counselor finding similar limitations as Dr. Shah. The ALJ found Ms. Sparks' opinion to also be inconsistent with the medical records, Claimant's testimony and adult function reports, and Claimant's other mental status examination findings. Although the ALJ did recognize Ms. Sparks' limitations were supported by statements in her report, the ALJ ultimately concluded that the statements in the report were inconsistent with the other medical evidence in the record. The ALJ adequately considered Ms. Sparks' report and did not err in his consideration of her opinion.

When all the evidence is considered, the conclusion that Claimant could perform light with work limitations is supported by substantial evidence. *See Hill v. Astrue*, 289 F. App'x. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before he can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination, and ultimately found that Claimant was not disabled. Accordingly, the decision of the Commissioner should be affirmed.

**Testimony of Vocational Expert**

Claimant contends the ALJ failed to account for all of Claimant's impairments in the hypothetical questioning of the vocational expert. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In posing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489. Here, the ALJ's questioning mirrored Claimant's RFC. As such, this Court finds the ALJ did not err in the questioning of the vocational expert.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge finds for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

**IT IS SO ORDERED** this 29th day of March, 2023

_____
**JASON A. ROBERTSON**
**UNITED STATES MAGISTRATE JUDGE**